UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CEMENT MASONS' PENSION
TRUST-FUND, DETROIT & VICINITY, et al.,

                Plaintiffs,                No. 04-CV-74006-DT

vs.                                    Hon. Gerald E. Rosen

MICHAEL McCARTHY and
ERIC TEICHNER, individually and
d/b/a KENSINGTON CONSTRUCTION
COMPANY; and McCARTHY
CONSTRUCTION COMPANY,

                Defendants.
_____/

OPINION AND ORDER DENYING
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

          At a session of said Court, held in
          the U.S. Courthouse, Detroit, Michigan
          on      March 24, 2006

          PRESENT:  Honorable Gerald E. Rosen
                              United States District Judge

## I.  INTRODUCTION

      Plaintiffs Cement Masons' Pension Trust Fund-Detroit & Vicinity, Bricklayers &

Trowel Trades International Pension fund, Cement Masons' Vacation & Holiday Trust

Fund-Detroit & Vicinity, Detroit & Vicinity Trowel Trades Health & Welfare Fund, and

Greater Detroit Cement Masons' Joint Apprenticeship Committee (collectively the

"Funds") filed the instant ERISA action to recover from Defendants Eric Teichner,

1

Kensington Construction, Michael McCarthy and McCarthy Construction Company allegedly delinquent contributions to the various Funds for the period February 2004 through February 2005 totaling $85,959.41.  This matter is presently before the Court on Plaintiffs' Motion for Summary Judgment in which the Plaintiff Funds ask the Court to find as a matter of law that the named Defendants are alter egos of one another. Defendants have responded to Plaintiffs' Motion, to which Response Plaintiffs have replied.  Having reviewed and considered the parties' briefs and supporting evidence the Court has determined that oral argument is not necessary.  Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this matter will be decided on the briefs.  This Opinion and Order sets forth the Court's ruling.

## II.  PERTINENT FACTS

### THE DEFENDANTS

Defendant McCarthy Construction Company is a Michigan corporation.  The company was formed in 1958 and incorporated in April 1963 by Ervin McCarthy. McCarthy Construction is a general contracting firm that performs work including excavation, demolition, remodeling, home building, masonry, foundations and machine-based repairs.  The company's principal place of business is located at 1033 Rig Street in Walled Lake, Michigan.  Defendant Michael McCarthy became the president of the McCarthy Construction in 1995.  Since the company's inception nearly 50 years ago, McCarthy has been a non-union employer.

Defendant Eric Teichner is Michael McCarthy's son-in-law. Teichner works for McCarthy Construction Company. In 2003, Teichner started Kensington Construction. Teichner filed a Certificate of Doing Business under Assumed Name with the Oakland County Clerk for Kensington Construction on February 11, 2003. Kensington's principal place of business is at 3187 Kenicott Drive in Commerce Township, Michigan. Since its inception in 2003, Kensington has almost exclusively performed concrete finishing work. On February 9, 2004, Teichner, on behalf of Kensington Construction, executed an agreement whereby Kensington agreed to adopt and be bound by all of the terms of the agreement between the Associated Concrete Contractors and the Cement Masons Union (the "ACCM" Agreement.). The ACCM Agreement requires signatory employers to contribute to the Cement Masons' pension and fringe benefit funds.

McCarthy Construction also executed a job-specific agreement with regard to payment of contributions to the Plaintiff benefit funds. In May 2004, McCarthy agreed to be bound by the Detroit Public Schools Project Labor Agreement with respect to work it was to perform on the Cass Technical High School construction project. Under Section 2-1 of the Project Labor Agreement, McCarthy agreed that the provisions of applicable local collective bargaining agreements of the signatory unions would apply to all work performed on that project. The Cement Masons Unions are such signatory unions and the ACCM Agreement is an applicable local collective bargaining agreement. During the relevant time period, Kensington had at most four employees. Arturo Ramirez

and Carlos Perez are actually the only two employees of Kensington.[1]  There is no dispute that contributions to the fringe benefit funds were made on their behalf by Kensington.  In the spring of 2004, Kensington also employed Terence Blankenship and Kenneth Van Hese for short periods of time.  According to Defendants, these two men were prior to that time employees of McCarthy Construction but when McCarthy had no work for them in March and May 2004, they went to work for Kensington.  When McCarthy again had work for them later in the year, Blankenship and Van Hese went back to work with McCarthy Construction.[2]

Kensington and McCarthy Construction have separate bank accounts at separate banks.  They file separate tax returns and have separate Employer Identification numbers.  Further, both companies have separate "general liability" insurance policies.  Both companies, however, use the services of Administrative Employee Services ("AES"), a

---

[1]  Like Eric Teichner, Arturo Ramirez and Carlos Perez were former employees of McCarthy Construction.  However, they have not worked for McCarthy since April 2004.  Teichner apparently remained a McCarthy employee even though he also owned Kensington.

[2]  The records produced by the parties indicate that McCarthy made contributions to the Plaintiff Funds at least on behalf of Kenneth Van Hese apparently for work done at the Cass Tech site.  No record has been produced which evidences payments to the Funds by McCarthy on behalf of Blankenship or payments made by Kensington on behalf of either of these two workers. (The Court notes that very few records submitted evidence payments to the Funds on behalf of specific employees.  *See e.g.,* Defendants' Ex. 8.  The records produced by Plaintiffs are merely the auditors' summaries and these do not appear to accurately reflect payments made to the Funds.  *Compare* Defendants' Ex. 8, McCarthy's Monthly Fringe Benefit Report to the Cement Masons' Union for September, October and November 2004 with the Auditors' Discrepancy Information summary at Auditor's Affidavit Ex. I.)

professional employment organization that handles payroll administration, payroll tax filings and insurance benefits for small businesses.

Payroll for both Kensington and McCarthy Construction, as well as for other AES clients, is provided under the name and Federal ID Number of "Administrative Employment Management Concepts, Inc." *See* Affidavit of Lynn Bergstrom, Director of Payroll of AES, ¶¶ 2-3. Defendants' Ex. 5.  Further, McCarthy Corporation and Kensington are both covered by the same Workers' Compensation policy through AES, policy no. WC A0388899.  *Id.* at ¶ 4.  Many other companies are also covered under this same AES policy.  *Id.*

Kensington and McCarthy Construction do not share common equipment.  Neither McCarthy Construction nor Kensington uses the other's equipment.  And, as indicated, the two companies have separate places of business and have separate phone numbers.

McCarthy Construction has subcontracted cement finishing work to Kensington. Kensington, however, also performs work for other customers other than McCarthy Construction.  These other customers include Walbridge Aldinger and the Chelsea Park Homeowners Association.

THE FUNDS' AUDIT OF KENSINGTON AND McCARTHY CONSTRUCTION

In May 2005, the Plaintiff Funds conducted an audit of the payroll records maintained by AES for McCarthy Construction and Kensington during the period of February 2004 through February 2005.  Based on this audit, the Plaintiffs claim a

deficiency in McCarthy Construction's contributions for work done at the Cass Tech High School job site in the amount of $15,564.16. Plaintiffs also claim an alleged deficiency in the contributions of Kensington Construction for work performed at the Cass Tech site in the amount of $3,250.11. In addition to these alleged deficiencies with respect to the Cass Tech job, without segregating out job sites or separating the Kensington employees from the McCarthy employees, and notwithstanding that only Kensington would have any contractual obligation to make contributions for work done on non-Cass Tech work, Plaintiffs seek to recover from both Kensington and McCarthy Construction, as well as the principals of each company, an additional alleged deficiency of $67,145.14 for work done on jobs other than the Cass Tech construction project.[3]

According to the Funds' audit of the AES records, Eric Teichner appeared on the payroll for Kensington only for the weeks of March 5, 2004, March 19, 2004, March 26, 2004 and June 4, 2004. The rest of the period, Teichner appeared on the payroll of McCarthy. This coupled with the apparent cross-over (discussed above) of Carlos Perez, Arturo Ramirez, Terrence Blankenship and Kenneth Van Hese who each worked part of the period for Kensington and part of the period for McCarthy Construction, has led the

---

[3] Comparing AES's payroll records Auditor's Affidavit, Ex. A and B, with the auditor's Discrepancy Information Summary at Affidavit Ex. K, it appears that this alleged deficiency is for contributions on behalf of six McCarthy employees (David Anderson, Jack Friend, Glen Lilly, Harold Meadows, Jerry Scott, and Tom Sousa), two Kensington employees (Carlos Perez and Arturo Ramirez), and three employees -- Eric Teichner, Kenneth Van Hese and Terence Blankenship -- who worked part of the time period for each of the companies.

Plaintiff Funds to conclude that the two companies should be treated as alter egos of each other to enable the Funds to collect any deficiency from either company or either of the companies' principals.[4]

### III.  DISCUSSION

### A.  STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is proper "'if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  Fed. R. Civ. P. 56(c).

Three 1986 Supreme Court cases -- *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) -- ushered in a "new era" in the standards of review for a summary judgment motion.  These cases, in the aggregate,

---

[4] Plaintiffs also rely on a few additional allegations concerning the companies' bank records which, on a few occasions, reflect payments made by one company to the other, and then shortly thereafter, a payment was made by the recipient company to AES. Plaintiffs contend that these "identical" payments show that the two companies are alter egos of each other. However, Defendants have provided evidence showing that McCarthy often subcontracted work to Kensington and the payments relied upon by Plaintiffs were for labor or supplies provided for the subcontracted work.  Plaintiffs also rely on electronic fund transfers made by McCarthy to Kensington's bank account. However, Defendant McCarthy has provided a sworn affidavit in which he states that such electronic fund transfers were only done when he was not available to personally sign checks.

lowered the movant's burden on a summary judgment motion.[5]  According to the *Celotex* Court,

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 U.S. at 322.

After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment.  They are summarized as follows:

> * The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.  This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> * The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."
>
> * The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.
>
> * The trial court has more discretion than in the "old era" in evaluating the respondent's evidence.  The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts."  Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted.  The trial court has at least some

---

[5]"Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials."  10A C. Wright, A. Miller, M. Kane, Federal Practice & Procedure, § 2727, at 35 (1996 Supp.).

8

discretion to determine whether the respondent's claim is plausible. *Betkerur v. Aultman Hospital Association*, 78 F.3d 1079, 1087 (6th Cir. 1996).  *See also, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).   The Court will apply the foregoing standards in deciding Plaintiffs' Motion for Summary Judgment in this case.

B.     KENSINGTON AND McCARTHY CONSTRUCTION ARE NOT ALTER EGOS OF EACH OTHER

The alter ego doctrine is most commonly used in labor cases to bind a new employer that continues the operations of an old employer in cases where the new employer is "merely a disguised continuance of the old employer."  *See N.L.R.B. v. Fullerton Transfer & Storage Ltd., Inc.*, 910 F.2d 331, 336 (6th Cir. 1990) (quoting *Southport Petroleum Co. v. N.L.R.B.*, 315 U.S. 100, 106 (1942)).  In this context, the alter ego theory "prevent[s] employers from evading obligations under the [National Labor Relations] Act merely by changing their corporate form."  *N.L.R.B. v. Allcoast Transfer, Inc.*, 780 F.2d 576, 579 (6th Cir. 1986); *see also N.L.R.B. v. C.J.R. Transfer, Inc.*, 952 F.2d 404, 1992 WL 3708 (6th Cir. 1992) (unpublished decision; text available on WESTLAW) (applying the alter ego doctrine where a company stopped making required contributions to a benefit fund after discharging all of its union employees, but the employees were promptly rehired to work in a nonunion company under the same ownership).

The Sixth Circuit has also suggested in dicta that the alter ego doctrine might also

be applied to so-called "double-breasted operations" to determine whether two or more coexisting employers performing the same work are in fact one business, separated only in form. *See Fullerton Transfer & Storage*, *supra* 910 F.2d at 336 & n. 7 (using traditional alter ego doctrine to impose liability but hypothesizing in dicta that the doctrine might be equally applicable "where a company operating with a unionized work force establishes a second nonunionized company performing the same work in the same market under the same control"). The Court of Appeals, however, has categorically rejected application of the alter ego doctrine in the inverse situation -- i.e., where a nonunion company establishes a union company and no preexisting labor obligations are disrupted. *See Trustees of the Resilient Floor Decorators Insurance Fund v. A & M Installations, Inc.*, 395 F.3d 244 (6th Cir. 2005).

The *Resilient Floor Decorators* case, like the instant action, involved a non-union company, Carpet Workroom, and a later-formed unionized company, A & M Installations. Carpet Workroom was a seller of carpet and flooring to commercial customers. John Lukasik founded the company in 1982. Darren Jahner, Lukasik's brother-in-law, was an employee of Carpet Workroom from 1986 until 2001 when he left the company to devote his full time and attention to A & M Installations, a unionized carpet and flooring installation company that he founded in 1997. Jahner had discovered while he was working for Carpet Workroom that there was "a need out there" for a floorcovering company that employed union installers, so he decided to form A & M.

Jahner had noted that a number of large companies, such as General Motors, would only award contracts to companies that employ union labor. Because Carpet Workroom often bid for the sale of carpet on union projects, it frequently would subcontract its installation work to the unionized A & M. 395 F.2d at 246.

In addition to working on many of the same projects and having many of the same customers, Carpet Workroom and A & M also shared office and warehouse space in the same building. And, because of the physical proximity of the two companies' operations, they also shared office equipment and personnel, as well. *Id.*

A & M's agreement with the union required A & M to make regular employee fringe-benefit contributions to the Resilient Floor Decorators Union trust funds based on the hours worked by A & M's employees. Although the audits conducted by the trust funds showed that A & M was in compliance with its payment obligations for its employees, Resilient Floor argued that A & M and Carpet Workroom were in reality alter egos of one another so that Carpet Workroom should be bound by the terms of the collective bargaining agreement signed by A & M and that Carpet Workroom, therefore, should be required to make contributions to the union trust funds based on the number of hours worked by Carpet Workroom employees.

The Sixth Circuit found no merit in Resilient Floor's alter ego argument and, accordingly, affirmed the district court's grant of summary judgment in favor of the defendants. The court reasoned:

11

> This argument is unpersuasive. . . because Resilient Floor disregards the fact that "an intent to evade" preexisting obligations is "clearly the focus of the alter ego doctrine." *Cement Masons' Pension Trust Fund v. O'Reilly*, 664 F. Supp. 277, 279 (E.D. Mich. 1987); *see also Allcoast Transfer, Inc.*, 780 F.2d at 579 (applying the alter ego theory to "prevent employers from evading obligations" under collective bargaining agreements. In the absence of some "indication that the relationship between [the companies] has changed over the years or has caused the [union] to receive less than that for which it bargained," there is no inequity that would justify a court's imposition of liability. *Mass. Carpenters Cent. Collection Agency* [*v. A.A Bldg. Erectors, Inc.*], 343 F.3d [18,] 22 [(1st Cir. 2003)] ("If the [union] wants to ensure that employers with whom it contracts are not or will not be part of a double-breasted operation, we see no reason why it cannot bargain for such an arrangement.")
>
> Our own court faced this same argument in a case with nearly identical facts to those presented here, in which an affiliate of Resilient Floor was the plaintiff, and we refused to apply the alter ego theory after concluding that there was "no injustice, fraudulent intent, or need to protect employees from being deprived of anticipated benefits" that could justify extension of the doctrine. *Resilient Floor Decorators Vacation Fund v. Contract Carpet, Inc.*, 70 F.3d 116, 1995 WL 611148 at *5 (6th Cir. Oct. 17, 1995) (unpublished). Because Resilient Floor has not alleged in the present litigation that A & M concealed its close relationship with Carpet Workroom, and because there is no indication that Resilient Floor has not received the full benefit of its collective bargaining agreement with A & M, the application of the alter ego doctrine is inappropriate here as well.

395 F.3d at 248.

The same is true in this case. Plaintiffs here have not alleged that Kensington concealed its close relationship with McCarthy Construction. Further, although Plaintiffs dispute Kensington's assertion that it has fully paid all contributions for its own employees, there is no indication that the union had any reason to believe that Kensington had more that the 2-5 employees the company has maintained throughout its

existence. Therefore, there is no factual basis for finding that the union received less than that for which it bargained when Kensington signed the union agreement and agreed thereby to make contributions to the union trust funds on behalf of its employees.

There being no evidence that Kensington was formed due to an "intent to evade" preexisting contractual benefit obligations, under *Resilient Floors*, application of the alter ego doctrine in this case would be inappropriate.

However, even if the Court were to conclude that the alter ego doctrine could be applied to a situation where no preexisting labor obligations are affected, Plaintiffs have failed to demonstrate a sufficient factual basis for a finding of alter ego status. The factors relevant to a finding of alter ego status include establishing that the two companies "have substantially identical management, business purpose, operation, equipment, customers, supervision and ownership." *Resilient Floors*, 395 F.3d at 248-49; *Allcoast Transfer*, *supra*, 780 F.2d at 579. In *Resilient Floors*, the court determined that, even if it were to conclude that the alter ego doctrine could be applied, the defendants' shared office and warehouse space, shared equipment and office staff, coupled with Carpet Workroom's loan of $5,000 to A & M to post a security bond with the union to fulfill a condition of its collective bargaining agreement fell "short of the kind of pervasive intermingling of funds and operations necessary to support a finding that two companies are alter egos of one another." *Id*. at 249 In *Roofers Local 149 Sec. Trust Fund v. Duane Smelser Roofing Co.*, 285 F. Supp. 2d 936, 941-942 (E.D. Mich.

2003), the court similarly determined that two companies were not alter egos of one another even though one company performed payroll for both and one of the companies failed to repay a $420,000 informal loan from the other. In *Trustees of the Pension, Welfare & Vacation Fringe Benefit Funds of IBEW Local 701 v. Favia Electric Co., Inc.*, 995 F.2d 785 (7th Cir. 1993), the court found a non-union sole proprietorship and union corporation were not alter egos despite the interrelation of operations between the companies, an identical workforce, and only nominally separate management, and one company also held an option to purchase the other company.

This case presents even more attenuated facts than the above-cited cases upon which to predicate a finding of alter ego status. Here, McCarthy Construction and Kensington have different ownership, different business purposes, different offices, different phone numbers, different officers, and different management -- and they do different work. The two companies maintain separate bank accounts, separate insurance policies, and do not share common equipment. Further, there is no evidence of intermingling of funds or assets.

In sum, lacking evidence of pervasive intermingling of funds and operations necessary to support a finding that Kensington and McCarthy Construction are alter egos of one another and there further being no evidence of an unlawful motive or intent on the part of the Defendants to avoid collective bargaining agreement obligations, the Court finds no basis for the imposition of alter ego status on Defendants.

CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiffs' Motion for Summary Judgment is DENIED.[6]


                    s/Gerald E. Rosen
                    Gerald E. Rosen
                    United States District Judge

Dated: March 24, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 24, 2006, by electronic and/or ordinary mail.

                    s/LaShawn R. Saulsberry
                    Case Manager

---

[6] This leaves for adjudication at trial the amount of unpaid contributions owed by Kensington for its own employees and the amount of contributions owed by McCarthy Construction for its employees who performed work covered by the ACCM Agreement at the Cass Tech construction site. The parties shall address these issues in their proposed Joint Final Pretrial Order.